EISENBERG & BAUM, LLP
Andrew Rozynski, Esq. (NY # 5054465)
Pro Hac Vice to Be Filed
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
arozynski@eandblaw.com

LAW OFFICE OF HAYES & WELSH
Martin L. Welsh, Esq.
(NV Bar No. 8720)
199 N. Arroyo Grande Blvd., Suite 200
Henderson, Nevada 89074
702-434-3444 (tel)
702-434-3739 (fax)
mwelsh@lvlaw.com; valencia@hayesandwelsh.onmicrosoft.com
*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

---

IRVEN WADE,

    Plaintiff,

v.

UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA AND THE CLARK COUNTY BOARD OF COUNTY COMMISSIONERS, a political subdivision of the State of Nevada,

    Defendants.

---

Case No.:

**COMPLAINT**
(Counsel will comply with LR IA 11-2 within 45 days)

**DEMAND FOR JURY TRIAL**

Plaintiff, IRVEN WADE, by and through his undersigned counsel, EISENBERG & BAUM, LLP, files this Complaint against Defendants, UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA AND THE CLARK COUNTY BOARD OF COUNTY COMMISSIONERS, a political subdivision of the State of Nevada (collectively Defendants),

1

and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Irven is profoundly deaf and communicates primarily in American Sign Language ("ASL"), which is his expressed, preferred, and most effective means of communication. His deafness impacted his ability to learn and acquire language from an early age, and as a result, he has difficulty communicating in English.[1] Plaintiff is likewise unable to effectively communicate by reading lips.[2] Defendants are a county-wide hospital and a governmental body overseeing the unincorporated areas of Clark County, Nevada.

2. Defendants both hindered and prevented Plaintiff from benefitting from their services, and discriminated against Plaintiff unlawfully, on the basis of Plaintiff's disability of deafness by refusing to provide the ASL interpreters that Plaintiff required to understand and participate in his medical care during a procedure and subsequent four-day hospitalization that Plaintiff underwent in Defendants' facilities. This denial was in spite of Plaintiff's repeated requests for an interpreter.

3. Based on Plaintiff's allegations herein, it is evident that Defendants have failed to implement policies, procedures, and practices respecting the civil rights and communication needs of deaf individuals. Plaintiff brings this lawsuit to compel Defendants to cease unlawful

---

[1] Due to physical, environmental, and pedagogical factors, many deaf individuals have difficulty acquiring spoken languages such as English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because many deaf people acquire English as their second language (after ASL or another form of sign language) well past the critical developmental period of language acquisition.

[2] Lip-reading, or the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct communication through a qualified sign language interpreter. Only a small number of spoken sounds in aural language are visible, and many of those words appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language as English and ASL are distinct languages with disparate grammatical structures.

2

discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf individuals to participate in and benefit from Defendants' health care services.

4. Plaintiff brings this action seeking declaratory, injunctive, and equitable relief; compensatory damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination against Plaintiff on the basis of his disability in violation of Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116.

**THE PARTIES**

5. Plaintiff IRVEN WADE brings this action as an individual residing in Sacramento, California. Plaintiff is a profoundly deaf individual who has limited English proficiency and who primarily communicates in American Sign Language. Plaintiff is substantially limited in the major life activities of hearing and speaking and is an individual with a disability within the meaning of federal and state civil rights laws.

6. Defendant UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA ("Defendant" or "UMC"), is a county-owned hospital with a corporate address at 1800 West Charleston Blvd., Las Vegas, NV 89102. Upon information and belief, Defendant University Medical Center is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements.

7. Defendant CLARK COUNTY BOARD OF COUNTY COMMISSIONERS (hereinafter "Clark County Commission") is the governmental organization that runs the unincorporated areas of Clark County, Nevada located in downtown Las Vegas. The Clark County Commission owns and operates University Medical Center of Southern Nevada. Upon information and belief, the Clark County Commission is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements.

## JURISDICTION & VENUE

8.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

9.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants are residents of this District, and/or Defendants have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced, and/or a substantial part of the events that give rise to the claims occurred in this District.

## STATEMENT OF FACTS

10.  Mr. Wade is a profoundly deaf individual who communicates primarily through American Sign Language.

11.  Plaintiff has limited proficiency in English, cannot effectively communicate by reading lips, and requires auxiliary aids and services to communicate effectively in a medical setting.

12.  Mr. Wade was involved in a motorcycle accident on March 15, 2015, and was admitted to Defendants' hospital from March 15, 2015 to March 18, 2015.

13.  Plaintiff was initially admitted to Defendants' hospital through the emergency room/trauma department for his injuries.

14.  Upon admission, Plaintiff's friend Brandy who knows some sign language, informed front desk staff that Plaintiff is deaf and requires an interpreter.

15.  Front desk staff responded that an interpreter would be provided that night. Brandy left the hospital shortly thereafter, leaving Plaintiff alone in Defendants' facilities.

16.  However, no interpreter ever arrived. In fact, Mr. Wade remained at Defendants'

facilities for four days. At no point during his stay from March 15, 2015 through March 18, 2015 was an interpreter or any other auxiliary aid or service provided.

17. Plaintiff sustained serious injuries in the car accident. In particular, both of Plaintiff's wrists were severely broken. Through written notes, Defendants' staff informed Plaintiff that he required surgery on both of his wrists.

18. However, due to his lack of English proficiency, the injuries to his wrists, the extreme pain that Plaintiff was in, and the medication that he was given, Plaintiff was unable to communicate with hospital staff through written notes.

19. Nonetheless, hospital staff insisted that Plaintiff communicate through written notes and failed to provide any other means of communication to him. Medical staff would hold pieces of paper out on which they indicated that they wanted for Plaintiff to write messages. However, his arms, which had been severely injured in the accident, were simply non-functional.

20. Additionally, Plaintiff was heavily medicated on Morphine in addition to a number of other medications. As a result, he was completely unable to communicate through written English, a language in which he lacks proficiency in even the most ideal conditions.

21. As a result, Plaintiff was unable to communicate with medical staff about his pain levels, his discomfort, his hunger, his body temperature, etc.

22. In spite of the severe pain that Plaintiff was experiencing, the date of his surgery was repeatedly pushed back by hospital staff without any explanation to Plaintiff.

23. As a result, Plaintiff was forced to endure days of excruciating pain with no ability to understand or communicate with staff about his medical condition. The stress and sheer torture of this situation left Plaintiff in an extreme state of stress and unable to sleep peacefully for days at a time.

24. During this time, Plaintiff repeatedly requested, and was repeatedly denied, sign language interpreters.

25. Eventually, Plaintiff's sister (Kaddie Ruiz) learned of his hospitalization and drove from California to Las Vegas and stayed in a hotel to aid in his care.

26. When she arrived, Plaintiff's sister was shocked by the state of her brother who was sweating, red, highly unwell, and in desperate need of surgery.

27. Plaintiff's sister immediately informed hospital staff that her brother was in desperate need of an ASL interpreter. None was provided.

28. Defendants' staff tasked Plaintiff's sister with serving as his interpreter even though she is not an interpreter and did not wish to function as such.

29. In spite of his sister's presence, Defendants' staff continued to delay his surgery.

30. As a result, Plaintiff's sister decided that Plaintiff should discharge himself from the hospital and seek medical care elsewhere.

31. When Defendants' staff learned that Plaintiff planned to discharge himself, they stated that he could receive surgery the next day. They nonetheless refused to provide interpreters before and after the surgery.

32. As a result, Plaintiff discharged himself against medical advice. Again, no interpreter services were provided at discharge.

33. Plaintiff's sister took Plaintiff to Sacramento, California where he immediately received surgery and was provided with the services of several interpreters.

34. Upon information and belief, Plaintiff's deafness, and its resulting limitation on Plaintiff's ability to communicate, were both obvious to Defendants' staff members, physicians, and surgeons at all times. Defendants' staff noted Mr. Wade's deafness in his chart.

35. In most instances, effective communication could not have taken place between

6

Plaintiff and Defendants' staff without the aid of a qualified ASL interpreter.

36. Indeed, as a result of Defendants' failure to provide effective auxiliary aids and services, Plaintiff did not understand the procedure he needed to receive; the reasons why that procedure was being delayed; the purposes of the treatments being provided; the common risks and/or benefits of those treatments; the common risks, side effects, and benefits of medications given; the specific dosage instructions for medications given; the existence of any alternative treatments; the approximate length of care; the potential side effects of stopping treatment; the details of any aftercare or discharge instructions; etc.

37. Defendants' discrimination against Plaintiff, and Plaintiff's resulting lack of understanding of his medical care, caused Plaintiff to suffer humiliation, anger, frustration, stress, anxiety, and emotional distress.

38. Furthermore, Plaintiff still suffers from extreme pain resulting from his injuries and the deficient care that he received at Defendants' facilities. To this day, Plaintiff commonly wakes up in the middle of the night in unbearable pain.

39. Defendants and Defendants' staff knew that Plaintiff is deaf and were aware that Plaintiff made repeated requests for interpreters.

40. Defendants also knew or should have known of their obligation as a health care provider under the ACA to develop policies to promote compliance with the ACA and to provide reasonable accommodations, including but not limited to the provision of ASL interpreters to ensure effective communication with deaf persons.

41. Defendants and their staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

42. Nonetheless, Defendants prevented Plaintiff from benefitting from its services by failing to provide the ASL interpreters necessary for his participation and care.

43. In doing so, Defendants intentionally discriminated against Plaintiff and acted with deliberate indifference to his federally protected rights.

44. Defendants' wrongful and intentional discrimination against Plaintiff on the basis of his disability is reflected by Defendants' failure to train employees and promulgate policies of non-discrimination against deaf individuals.

45. As a result of Defendants' failure to ensure effective communication with Plaintiff, Plaintiff received services that were objectively substandard and that were inferior to those provided to patients who are hearing.

46. Plaintiff is entitled to equal access to services offered by Defendants as are enjoyed by non-disabled persons.

47. Plaintiff regularly visits Las Vegas and still wishes to access Defendants' services and receive care in Defendants' facilities, but is being prevented from doing so by Defendants' discrimination against him on the basis of his disability.

48. As a result of his experience in Defendants' facilities, Plaintiff filed a complaint with the Nevada Equal Rights Commission. The complaint was closed in August of 2018.

## CLAIM I: VIOLATIONS OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

49. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

50. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and has applied to the Defendants' conduct.

51. At all times relevant to this action, Plaintiff has had substantial limitations to the

major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

52. At all times relevant to this action, Plaintiff's primary language for communication has been American Sign Language (and not English), and Plaintiff has had limited ability to read, write, speak, or understand English. Plaintiff has therefore been an individual with limited English proficiency within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 45 C.F.R. § 92.4.

53. At all times relevant to this action, Defendants received federal financial assistance, including Medicare and/or Medicaid reimbursements, and have been principally engaged in the business of providing health care. Therefore, Defendants are a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

54. Pursuant to Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

55. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take reasonable steps to provide meaningful access to each individual with limited English proficiency eligible to be served or likely to be encountered in its health programs and activities." 45 C.F.R. § 92.201.

56. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "(1) A covered entity shall offer a qualified interpreter to an individual with limited English proficiency when oral interpretation is a reasonable step to

provide meaningful access for that individual with limited English proficiency; and (2) A covered entity shall use a qualified translator when translating written content in paper or electronic form." 45 C.F.R. § 92.201(d).

57.  Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity that provides a qualified interpreter for an individual with limited English proficiency through video remote interpreting services in the covered entity's health programs and activities shall provide: (1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter's face and the participating individual's face regardless of the individual's body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the video remote interpreting." 45 C.F.R. § 92.201(f).

58.  Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities." 45 C.F.R.§ 92.202(a).

59.  Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "(1) A [covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a public entity shall give

primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 45 C.F.R. § 92.202(a); 28 C.F.R. § 35.160(b).

60.  As set forth above, Defendants discriminated against Plaintiff, on the basis of disability, in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

61.  The Patient Protection and Affordable Care Act, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by discrimination in violation thereof. 42 U.S.C. § 18116(a).

62.  Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Patient Protection and Affordable Care Act.

63.  Plaintiff is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a.  Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation Section 1557 of the Patient Protection and Affordable Care Act.

b.  Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their

companions, meaningful access to and full and equal enjoyment of Defendants' facilities, services, or programs;

    c.    Issue an injunction ordering Defendants:

        i.    to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

        ii.    to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly marked and worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

        iii.    to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances.

        iv.    to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

        v.    to train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ACA.

    d.    Award to Plaintiff:

        i.    Compensatory damages pursuant to the ACA;

ii. Reasonable costs and attorneys' fees pursuant to the ACA;

iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

iv. Any and all other relief that this Court finds necessary and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: October 5, 2018

Respectfully submitted,

By:

*/s/ Andrew Rozynski*

Andrew Rozynski, Esq.
Pro Hac Vice to Be Submitted
NY# 5054465
arozynski@eandblaw.com
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
*Attorneys for Plaintiff*

LAW OFFICE OF HAYES & WELSH

 /S/Martin L. Welsh
MARTIN L. WELSH, ESQ.
Nevada Bar No. 8720
199 N. Arroyo Grande Blvd., Ste. 200
Henderson, Nevada 89074
*Attorneys for Plaintiff*